JUNIUS CONSTRUCTION CORPORATION, Respondent, *v.* BESSIE COHEN, Individually, and as Executrix of DAVID COHEN, Deceased, Appellant.

394

(Argued October 6, 1931; decided November 17, 1931.)

*Joseph J. Corn, Jr.,* for appellant. Statutes similar to and less drastic than section 35 of the General City Law have been held unconstitutional. (*Seaman* v. *Hicks,* 8 Paige, 655; *Matter of Wall Street,* 17 Barb. 617; *Matter of Rogers Avenue,* 29 Abb. N. C. 361; *Forster* v. *Scott,* 136 N. Y. 577; *Matter of Mayor,* 24 App. Div. 7; *German American Real Estate Co.* v. *Meyers,* 32 App. Div. 41; *Edwards* v. *Bruorton,* 184 Mass. 529; *Matter of City of New York* [*Avenue D*], 200 N. Y. 536; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274; *Kittinger* v. *Rossman,* 12 Del. Ch. 276; *Sage* v. *City of Brooklyn,* 89 N. Y. 189.) The trial court did not err in rejecting plaintiff's proposed proof of changed conditions. (*Allen* v. *Pfaltz & Bauer Realty Co., Inc.,* 227 App. Div.

666; *Pakas* v. *Clarke*, 136 App. Div. 292; 203 N. Y. 534; *Jenkins* v. *Fahey*, 73 N. Y. 355; *Schiffer* v. *Dietz*, 83 N. Y. 300; *Haffey* v. *Lynch*, 143 N. Y. 241; *Merchants Bank* v. *Thomson*, 55 N. Y. 7; *Westown Realty Co.* v. *Keller*, 143 App. Div. 458; *Schmidt* v. *Reed*, 132 N. Y. 108; *Maupai* v. *Jackson*, 139 App. Div. 524; *Strasbourger* v. *Hesu Realty Co.*, 198 App. Div. 805; *Thomas* v. *Scott*, 127 N. Y. 133.)

*Joseph Feldman* and *Louis Rosenberg* for respondent. In view of the express representation in the contract contained, as to just what streets are shown on the final city maps, no proper title was tendered by the defendant in accordance with the contract provisions. (*Forster* v. *Scott*, 136 N. Y. 577.) Assuming section 35 of the General City Law to be constitutional and valid, the final city map showing Rutledge street as a proposed street through the property, created an incumbrance which rendered title on the date of closing unmarketable. (*Forster* v. *Scott*, 136 N. Y. 577; *Anderson* v. *Steinway*, 178 App. Div. 507; *Kerrigan* v. *Backus*, 69 App. Div. 329; *Kellogg* v. *Ingersoll*, 2 Mass. 97; *Empire Corp.* v. *Sayre*, 107 App. Div. 415.) The refusal of the trial court to permit proof of change of circumstances between the closing date and the day of trial was error. (*Scheller* v. *Dietz*, 83 N. Y. 399; *Stokes* v. *Stokes*, 155 N. Y. 590; *Eiseman* v. *Josephthal*, 71 Misc. Rep. 288; *Peters* v. *Delaplaine*, 49 N. Y. 362; *Strasbourger* v. *Hesu Realty Co.*, 198 App. Div. 805; *Weinheimer* v. *Ross*, 205 N. Y. 518; *Maupai* v. *Jackson*, 64 Misc. Rep. 407; 139 App. Div. 524; *Hubbell* v. *Von Schoening*, 49 N. Y. 326; *Clarke* v. *Rochester, L. & N. F. R. R. Co.*, 18 Barb. 350; *Trustees of Columbia College* v. *Thatcher*, 87 N. Y. 317; *Miller* v. *Bronson*, 26 R. I. 62; *Meidling* v. *Trefs*, 48 N. J. Eq. 638; *Rennyson* v. *Rozell*, 106 Penn. St. 407.)

CARDOZO, Ch. J. Plaintiff and defendant's testator made a contract whereby the one agreed to buy and the

other to sell a parcel of land in the borough of Queens, city of New York, bounded on the south by Haverkamp street, on the west by Acton street and on the east by Weisse avenue. In the list of incumbrances we find the following: " Subject to the facts that section 35 of the Final Maps of the Borough of Queens shows a proposed change in the line of Weisse Avenue; if such street is legally opened upon the lines shown by said final maps a portion of said premises fronting on Weisse Avenue will be taken for street purposes; and also subject to the facts that section 35 of the final maps of the Borough of Queens shows a street known as Acton Street running across the northwesterly portion of said premises; if such street is legally opened upon the lines shown by said final maps a portion of said premises will be taken for such street."

The buyer was thus warned that the opening of streets on the east and west might modify in the future the exterior boundaries, and might affect to that extent the area subject to improvement. What the buyer was not warned of is the fact that on the same map there was another street (Rutledge street), which, if opened, would cut the plot substantially in half. This information the seller withheld.

At the appointed time for closing, the buyer, who had examined the records in the interval, refused to accept a conveyance, taking the ground that the contract had been made with a view to the building of a factory, and that a street bisecting the plot would make the conveyance useless.

This action has been brought to recover the down payment and the title expenses and to declare them liens upon the land. The defendant has counterclaimed for specific performance. There was proof upon the trial that while the action was pending a new map had been filed, and that Rutledge street was no longer there.

The trial judge refused to receive testimony as to the

purpose of the plaintiff in contracting to buy the land, and as to a change in its financial position between the rejection of the title and the time of the trial, two years thereafter. The Appellate Division reversed and granted a new trial on the ground that evidence of changed conditions had been erroneously excluded.

We think the plaintiff acted without fault in refusing to accept the conveyance tendered by the seller.

By an amendment adopted in 1926 (Laws 1926, ch. 690) there was inserted in the General City Law (Cons. Laws, ch. 21) an article, designated 3, covering the subject of official maps and planning boards.

By section 26 of the act, as thus amended, " every city by ordinance or resolution of the legislative body which has the authority to lay out, adopt and establish streets, highways and parks may establish an official map or plan of the city showing the streets, highways and parks theretofore laid out, adopted and established by law, and such map or plan is to be deemed to be final and conclusive with respect to the location and width of streets and highways and the location of parks shown thereon. Such official map or plan is hereby declared to be established to conserve and promote the public health, safety and general welfare. Said ordinance or resolution shall make it the duty of some appropriate official or employee of said city at once to file with the clerk or register of the county or counties in which said city is situated a certificate showing that the city has established an official map or plan."

By section 27, the legislative body is empowered to create by resolution or ordinance a planning board of five members to be appointed by the mayor or other duly authorized appointing authority.

By section 29, the legislative body of each city is empowered to change the official map or plan from time to time after a public hearing, but before making such

change the matter shall be referred to the planning board for report thereon.

By section 35, the Legislature prohibited the construction of a building within the lines of a mapped street except upon a permit to be issued subject to such conditions as the board having jurisdiction of the application might see fit to approve. The section reads as follows: " For the purpose of preserving the integrity of such official map or plan no permit shall hereafter be issued for any building in the bed of any street or highway shown or laid out on such map or plan, provided, however, that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case by the vote of a majority of its members to grant a permit for a building in such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the city. Before taking any action authorized in this section, the board of appeals or similar board shall give a hearing at which parties in interest and others shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in an official publication of said city or in a newspaper of general circulation therein. Any such decision shall be subject to review by certiorari order issued out of a court of record in the same manner and pursuant to the same provisions as in appeals from the decisions of such board upon zoning regulations."

We find it unnecessary to determine for the purpose of this appeal whether the official map on file in the city of New York, a map prepared by the local authorities in

accordance with section 442 of the charter of the city, is such a map as was contemplated by the Legislature in the enactment of section 26 of the General City Law. We find it also unnecessary to determine whether section 35 with its restrictions upon the enjoyment of the land within the boundaries of a mapped street is an unconstitutional interference with vested rights of property (cf. on the one hand *Forster* v. *Scott*, 136 N. Y. 577; *Matter of Wall Street*, 17 Barb. 617, 636; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 206 N. Y. 274; *Edwards* v. *Bruorton*, 184 Mass. 529, and on the other hand, *Matter of City of New York*, 196 N. Y. 255; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365). For the purpose of this appeal we may assume in favor of the appellant that the mere marking on an official map of a projected, but unopened street, will not deprive the buyer of the right to build within the lines so mapped until appropriate proceedings for condemnation have placed the title in the city. If all this be taken as true, we are still brought to the conclusion that there was misrepresentation by the seller as to the situation of the land and the contingencies affecting the right to use it in the future whereby the buyer was relieved of the duty to go forward with the bargain.

The contract describes as an incumbrance the existence of Acton street and Weisse avenue upon the official map of the borough, and gives warning that the land as mapped may thereafter be condemned. The opening of those streets will leave the subject of the sale substantially intact. The buyer, warned of the risk, was ready to assume it. But there was another and greater risk about which the seller was silent; a risk like in kind but vastly greater in degree. Rutledge street, if opened, would split the plot in halves. The seller was not at liberty in good conscience to list among the incumbrances the two unopened streets, which, even if opened, would leave the

value unimpaired, and, while listing these, suppress the existence of a third unopened street, which, if opened, would destroy the value for the use intended by the buyer. No one can say with reason that the plaintiff would have signed this contract if informed of the likelihood that its factory, when built, would be bisected by a street, to say nothing of the possibility that a permit to build would be denied altogether. Misrepresentation, if there was any, as to a risk so vital was something that went to the very essence of the bargain. We do not say that the seller was under a duty to mention the projected streets at all. That question is not here. What we say is merely this, that having undertaken or professed to mention them, he could not fairly stop half way, listing those that were unimportant and keeping silent as to the other. The enumeration of two streets, described as unopened but projected, was a tacit representation that the land to be conveyed was subject to no others, and certainly subject to no others materially affecting the value of the purchase. The result is the same whether the silence of the seller as to the presence of a bisecting street was innocent or deceitful. Misrepresentation, even though innocent, sustains the rescission of the contract and the rejection of the title (*Bloomquist* v. *Farson*, 222 N. Y. 375; *Seneca Wire & Mfg. Co.* v. *Leach & Co.*, 247 N. Y. 1; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 186).

The defendant makes the point that the title, even if defective at the time of closing, had been made good before the trial as the result of an amendment of the map, and that judgment for specific performance should have been given on the counterclaim (*Haffey* v. *Lynch*, 143 N. Y. 241). This is true only if changed conditions did not render such relief inequitable. Two years had elapsed between the law day and the trial, and a time almost as long between the law day and the later map. The plaintiff offered testimony designed to inform the court that it was buying the land in order to erect

a factory; that the purpose of the whole transaction had been frustrated by delay; and that added to all this, the financial condition of the buyer had so changed in the interval as to render performance of the bargain either impossible or burdensome. All this testimony was rejected by the trial judge with a sweeping ruling to the effect that nothing would be received with reference to change of circumstances in respect of the purpose of the purchase or the means of the purchaser. The testimony offered had a material bearing upon the justice of awarding specific performance to a seller who, after default upon the law day, had become a postulant in equity for a discretionary remedy (*Willard* v. *Tayloe*, 8 Wall. [U. S.] 557; *Gotthelf* v. *Stranahan*, 138 N. Y. 345, 352; *Stokes* v. *Stokes*, 155 N. Y. 581, 590).

The order should be affirmed and judgment absolute ordered against the appellant upon the stipulation with costs in all courts.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.