Charles E. McGLOTHLIN, Plaintiff,

v.

Harry W. NICHOALDS, Jr., an individual, Compass Corporation, a Colorado Corporation, and Trilon Oil Co., Inc., a Colorado Corporation, Defendants.

Civ. A. No. 7517.

United States District Court
D. Colorado.

Dec. 19, 1962.

Holland & Means, and Stanley H. Johnson, Denver, Colo., for plaintiff.

George J. Francis, Denver, Colo., for defendants.

DOYLE, District Judge.

The above-entitled action was tried to the Court on November 19 and 20, 1962. Subsequently, briefs were filed by attorneys for both parties and the matter is now submitted for decision.

THE PLEADINGS

The complaint contains three counts: The first alleges that misrepresentations were made to induce the sale of a stock interest in a corporation which owned a ranch in Montana. The prayer seeks rescission and damages in the amount of the consideration paid by the plaintiff. Both the second and third counts are offered in the alternative. These also allege misrepresentation, but in addition allege that subsequent to plaintiff's giving notice of rescission defendants proceeded to sell all of the assets in the Compass Corporation in which the plaintiff had purchased shares, and did so without giving proper notice to the plaintiff and without satisfying the applicable corporate laws, all in furtherance of a conspiracy to deprive plaintiff of his equity in the Compass Corporation. The third count demands an accounting and other equitable relief.

## STATEMENT OF THE EVIDENCE

The salient facts established to the satisfaction of the Court are:

The defendant Nichoalds was the principal officer and owned all the shares of the Compass Corporation, a Colorado corporation which owned the ranch property here involved. Compass had a total of 16,000 issued shares. Defendant Nichoalds was also the principal officer in control of the defendant Trilon Oil Company. He owned 15,000 of the 25,000 shares outstanding. Mention is made of these two corporations because the plaintiff purchased shares in Compass Corporation, and later sought to rescind this purchase. Trilon was used by Nichoalds to finance Compass. Loans were made by Trilon to Compass for operating expenses and this factor also entered into the attempted rescission by plaintiff. Later, Trilon purchased the ranch from Compass. Presumably, all of these corporate activities were actions of the defendant Nichoalds who had full and complete control of both companies.

As of December, 1960, plaintiff had been employed in the United States Forest Service. Although he had had previous ranch experience, the evidence indicated that he had little experience in business. He had accumulated some savings and was desirous of investing in a ranch property and wished to engage in ranch work. He was introduced to Nichoalds through a Billings, Montana realtor with whom Nichoalds had listed for sale the ranch property which was owned by the Compass Corporation and which was located near Lame Deer, Montana. The price was $89,000.00.

Plaintiff is shown to have had extensive discussions and negotiations with Nichoalds, but it was apparent at once that he did not have enough money to buy the ranch outright and after Nichoalds indicated a desire to sell an interest in it, stating that the reason for selling was his inability to get efficient managerial help, plaintiff evinced an interest to buy in on this basis.

Following these preliminary conversations with Nichoalds, plaintiff cursorily examined the property itself, looked at the cattle and also some of the equipment, and then talked to Nichoalds regarding the extent of the holdings of the ranch, the value of the equipment and the cattle.[1] Nichoalds valued the entire property in an amount approximating $140,-000.00 or $145,000.00 and represented that the liabilities against the ranch consisted of:

1. $36,666.00 owed to the seller of the ranch;

2. A $2,000.00 payment on 440 acres additional (which Nichoalds had bought after he purchased the original property);

3. A $1,000.00 balance on recently acquired bulls;

4. That there was adequate money to pay expenses and also:

5. That the title to all of the property was in the Compass Corporation.

Plaintiff advised Nichoalds that $15,-000.00 was the maximum amount that he could raise, although he offered to transfer his jeep and house trailer to the Compass Corporation in exchange for stock in Compass. However, Nichoalds accepted the $15,000.00 and a contract was executed December 20. Under the terms of this agreement the stock was valued at $6.50 per share, this being in relation to the total value of the property owned by the corporation. Of a total of 16,000 shares, 2310 shares of stock of the Compass Corporation were immediately sold and delivered to plaintiff for the $15,000.00 agreed upon (but not then paid); 5,690 shares were placed in escrow. The object of this deposit in escrow was to insure that fifty per cent. of the shares would ultimately become the property of plaintiff. The purchase price of these shares was to have been paid from dividends due plaintiff. Nichoalds retained 8,000 shares, or fifty per cent. and thus it was contemplated that eventually each of the parties would own

---

1. (which consisted of somewhere in the neighborhood of 190 cows and several bulls)

fifty per cent. of the Compass Corporation.

It is thus apparent that in the course of their discussions preliminary to the sales agreement, Nichoalds undertook to tell plaintiff in detail about the assets and liabilities of Compass Corporation.

One week after the execution of the contract plaintiff talked to Nichoalds at the ranch and for the first time learned that there was still another outstanding loan in the amount of $27,000.00. This was owed to the bank at Hardin, Montana. Plaintiff also learned that Nichoalds was at that very time negotiating with the Farmers Home Association for a loan which would permit him to pay off this $27,000.00 obligation and that a conference was scheduled with the F.H.A. and officials of the Big Horn State Bank at Hardin the next day. Plaintiff then spoke to his lawyer, one Redle, at Sheridan, Wyoming, and on his advice went to Hardin, Montana, and attended the meeting. Nichoalds obtained the loan in the amount of $19,000.00 from the Farmers Home Administration and applied this to reduction of the bank loan.

After this conference, plaintiff protested to Nichoalds regarding the latter's failure to reveal the $27,000.00 indebtedness and Nichoalds claimed that he had in fact told plaintiff of the $27,000.00 loan before the contract was signed. At this stage plaintiff had not paid the $15,000.00 which he had agreed to invest and Nichoalds consented to re-value the shares of stock and to reduce the value of each share from $6.50 to $4.85, thus allowing for this additional indebtedness. Under this arrangement plaintiff obtained delivery of some of the shares which otherwise, under the agreement (as originally drawn) would have been placed in escrow.

After this, on December 30, 1960, plaintiff delivered his first check in the amount of $12,000.00 to Nichoalds. In accordance with Nichoalds' instructions he obtained a cashier's check payable to the Trilon Oil Company (a corporation which Nichoalds controlled). At about the same time, plaintiff took over as manager of the Rocking "N" Ranch at a salary of $250.00 per month, plus a housing allowance.

Plaintiff soon learned other facts which had not been revealed, or which had been misrepresented. A herd of cattle had been purchased by Nichoalds in Nebraska. These had the Rocking "N" brand. These had been pledged to the bank of the Big Horn State Bank at Hardin, Montana, as security for the $27,000.00 loan. Plaintiff had also believed that these cattle stood in the name of the Compass Corporation. In fact the cattle had been acquired by Nichoalds in Nichoalds' own name. This information came to plaintiff's attention when he saw a letter from the State Brand Inspector refusing to transfer the Rocking "N" Brand to the Compass Corporation. These cattle had been subsequently pledged to the Federal Home Administration as security for the $19,000.00 loan which was made about December 27 or 28.

Several bills came in during the month of January which he had not known about. The sales agreement had provided that any amounts advanced by the Trilon Corporation *after* the sale of the stock to the plaintiff would have to be repaid. Plaintiff said that he learned of a lumber bill for some $900.00 during the first part of February, and also learned that there was an additional $1,000.00 due on the bulls which had been purchased just before he bought in. He also learned that there was an outstanding indebtedness in the amount of $3,300.00 on one item of ranch equipment.

It further became apparent in January, 1961 that the Compass Corporation had no cash on hand whatsoever and that operating expenses had to be paid from the funds of the Trilon Corporation which, as had been explained, was some other enterprise which Nichoalds controlled. Although Nichoalds had previously indicated to plaintiff that there was adequate money to operate the ranch, he finally admitted during the course of a conversation which plaintiff had with him

on February 2, 1961, that there was not enough money and that further stock would have to be issued. It was then that plaintiff told him that he wanted his money back and he intended to get out. However, Nichoalds said that he did not have the money to pay him at that time, but finally after another conflict (on which occasion Nichoalds told plaintiff he was fired), on February 12, plaintiff and Nichoalds went to plaintiff's lawyer's office at Sheridan, Wyoming and agreed on terms of plaintiff's withdrawal. Plaintiff agreed to remain for an additional week and defendant agreed to pay back the $13,600.00 the following November. This agreement was reduced to writing, but Nichoalds at that time refused to sign it until it was examined by his lawyer. He took the agreement but failed to either sign or return it, and on February 13, plaintiff's attorney, Mr. Redle, sent a letter notifying Nichoalds of plaintiff's decision to rescind the agreement, offering to give back the stock and demanding return of the purchase price.

Plaintiff left the premises on the day that he agreed to leave and he did not hear from Nichoalds until the following May. At this time a telegram was sent to plaintiff's last known address at Lame Deer, Montana (this was also sent to plaintiff's lawyer in Sheridan), notifying of a special meeting of the Board of Directors (to be held soon after the notice) to elect George Francis (Nichoalds' attorney in this action), as a director of the Compass Corporation.

This meeting was held, but contrary to the notice the directors not only elected Francis director—they also authorized the sale of the Rocking "N" Ranch to the Trilon Corporation. The consideration was forgiveness of a $20,000.00 debt owed by Compass to Trilon, plus a note from Trilon to Compass Corporation in the amount of $60,000.00. Contemporaneously, the Rocking "N" Ranch was conveyed to still another corporation, Lame Deer, in exchange for a ranch property near Saratoga, Wyoming, which ranch property was conveyed to still another corpora-

tion, called "El Sol," the stock of which was wholly owned by Trilon. The end result was that plaintiff, as of June, 1961 owned stock in a company, the sole asset of which was a note in the amount of $60,000.00 signed by Trilon. Meanwhile, all of the tangible assets of Compass had been conveyed away and had been placed beyond his reach.

## THE ISSUES

1. Whether there were misrepresentations which justified the rescission; or

2. In the alternative were sufficient to allow plaintiff to recover in fraud or deceit; and

3. Whether the plaintiff is entitled to additional equitable relief in the nature of accounting.

Defendant's position is that plaintiff has by his conduct irrevocably elected to rescind and he is thereby precluded from pursuing any logically inconsistent remedies in deceit or accounting. Defendant also apparently takes the position that the evidence is inadequate to justify recovery of purchase money on a rescission theory; this, however, the defendant has not argued in the submitted briefs.

## CONCLUSIONS

### 1. SUFFICIENCY OF THE EVIDENCE TO JUSTIFY THE RESCISSION

The first inquiry is whether the representations were of a kind and character justifying the attempted unilateral rescission by plaintiff and so as to now give rise to a decree of rescission.

An important background fact to note is that the contract looked to a fifty-fifty corporation whereby plaintiff would manage the ranch and the plaintiff and Nichoalds would share in the profits.

The alleged representations were for the most part nondisclosure (although there were also some positive statements such as the representation that there was adequate working capital). Basically, it is a case of Nichoalds' overselling the transaction to plaintiff and he un-

questionably failed to fully and fairly disclose the important facts. There had been no disclosure of the $27,000.00 obligation nor of the debts which plaintiff discovered after making the initial or $12,000.00 payment. After discovering the true condition of things plaintiff promptly gave notice of his election to rescind.

■ Rescission is, of course, a proper remedy where, as here, the contract has been induced by fraud. See Brown v. Alkire, 10 Cir., 295 F.2d 411, 415 and the cases there cited.

■ Furthermore, where the fraud consists of nondisclosure of material facts, it is actionable where, as here, the seller has undertaken to inform the buyer on the particular subject and has stopped short. See Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154; 27 A.L.R.2d 14, at 96.

In Junius Construction Corp. v. Cohen, 257 N.Y. 393, 178 N.E. 672, the New York Court of Appeals, per Mr. Chief Justice Cardozo, expressed the matter as follows:

" * * * The seller was not at liberty in good conscience to list among the incumbrances the two unopened streets which, even if opened, would leave the value unimpaired, and, while listing these, suppress the existence of a third unopened street, which, if opened, would destroy the value for the use intended by the buyer. No one can say with reason that the plaintiff would have signed this contract if informed of the likelihood that its factory, when built, would be bisected by a street, to say nothing of the possibility that a permit to build would be denied altogether. Misrepresentation, if there was any, as to a risk so vital was something that went to the very essence of the bargain. We do not say that the seller was under a duty to mention the projected streets at all. That question is not here. What we say is merely this, that having undertaken or professed to mention them, he could not fairly stop half way, listing those that were unimportant and keeping silent as to the other. The enumeration of two streets, described as unopened but projected, was a tacit representation that the land to be conveyed was subject to no others, and certainly subject to no others materially affecting the value of the purchase. The result is the same whether the silence of the seller as to the presence of a bisecting street was innocent or deceitful. Misrepresentation, even though innocent, sustains the rescission of the contract and the rejection of the title."

■ Also in the instant case the nondisclosure is actionable regardless of whether it was innocent or intentional since intent in the odious sense is not a necessary ingredient of rescission. A. L.I., Restatement of Restitution, § 28; Prosser on Torts, p. 525. The authority last cited explains that:

"The equity courts were not bound by rules adopted at law, and proceeded to evolve their own definition of the 'fraud' which would justify relief. Since they did not take jurisdiction for the purpose of giving the plaintiff damages, they were more concerned with the injustice of allowing the defendant to retain what he had received through the plaintiff's erroneous belief in the truth of his statement than with any question of the wrongfulness of his own conduct. Hence they gave a remedy for innocent misrepresentation, without the element of intent which became necessary for the tort action of deceit. * * *"

The fact that plaintiff performed the contract after learning of the $27,000.00 indebtedness does not constitute an effective waiver by him. Plaintiff was justified in believing that Nichoalds had then fully disclosed the extent of the indebtedness and when he later learned that there were other matters which had been concealed, all of the glossing misstatements and nondisclosures of Nichoalds

became a proper basis for plaintiff's election to rescind. Furthermore, defendant was not prejudiced in that he did not change his position to his damage following plaintiff's payment. See Rogers v. Fitzsimmons, 127 Colo. 367, 257 P.2d 420, where it was said:

> "As to the contention that plaintiff waived her cause of action by making two payments pursuant to the terms of the contract following the discovery of the alleged fraud and payments after filing suit, we cannot say that she was guilty of laches before demanding rescission of the contract, because there is no showing of any change in the position of the parties that would make it inequitable for her to enforce the right of rescission, if she had one, on the grounds alleged; * * *."

■ It must be concluded that from the evidence and the applicable law plaintiff was entirely within his rights in rescinding the purchase on February 2 and February 13, and in demanding the return of the purchase price.

## 2. MUTUAL RESCISSION

■ There is an independent basis for concluding that plaintiff is entitled to a decree of rescission since the defendant himself repudiated the contract by "firing" plaintiff as manager and by agreeing to the return of the consideration paid. The Court is convinced that defendant agreed to a rescission on the occasion of the meeting in Mr. Redle's office on February 12, 1961. Subsequently, plaintiff departed from the ranch in the belief that Nichoalds would return his consideration. The latter treated the contract as rescinded when at a later time he conveyed the ranch property out of the Compass Corporation, finally trading it to the El Sol Corporation. By so doing, he treated the property as his own and in legal effect acted on the basis that there had been a rescission. He is now precluded from denying that the purchase contract was in fact and in law rescinded

and the plaintiff is entitled to the return of the amounts which he paid. A.L.I. Restatement of the Law of Contracts, § 90; 1 Corbin on Contracts, 675, § 206. Cf. J. K. Welding Company, Inc. v. W. J. Halloran, Steel Erection Co., 178 F.Supp. 584 (D.C.R.I.1959); Church v. Bobbs-Merrill Co., 170 F.Supp. 32 (So.Dist. Ind.1959), affirmed 7 Cir., 272 F.2d 212; Boeing Airplane Co. v. Aeronautical Lodge, 91 F.Supp. 596 (W.Dist.Wash., No.Dist.1950), affirmed 9 Cir., 188 F.2d 356. See also 17 C.J.S. Contracts § 430, p. 912.

## 3. PLAINTIFF'S OTHER DEMANDS

The other remedies asserted by plaintiff in Counts 3 and 4 assume denial of relief based upon rescission. Since the Court has decreed that plaintiff is entitled to rescission, it is now unnecessary to consider the merits of these claims. Plaintiff has, however, demonstrated that both of the corporations which have entered into this transaction were treated by the defendant Nichoalds as his own property even to the extent that he transferred assets of Compass from that corporation to Trilon. The Court is of the opinion that the plaintiff is entitled to judgment not only against Compass Corporation and Nichoalds, but is also entitled to judgment against Trilon as well to the extent that Trilon benefited. It is, therefore,

ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of the plaintiff in the amount of the sums paid by plaintiff to Nichoalds and to Trilon for his stock. Plaintiff is entitled to and judgment is hereby entered in the amount of Thirteen Thousand Six Hundred Dollars ($13,600.00), the said judgment in favor of the plaintiff and against the defendants Harry H. Nichoalds, Jr. and Compass Corporation. Judgment shall be entered against Trilon Oil Company, Inc. in the amount of $12,000.00, being the sum which plaintiff paid to Trilon on December 30, 1960.