ALPHONSE DI BIASI, Plaintiff, and AL DI BIASI CONSTRUCTION CORP., Respondent, on Behalf of Themselves and All Others Similarly Situated, *v.* CITY OF NEW YORK et al., Appellants.

Second Department, July 8, 1963.

324

*Leo A. Larkin, Corporation Counsel (Seymour B. Quel* and *Milton H. Harris* of counsel), for appellants.

*John J. Turvey (Martin Fogelman* of counsel), for respondent.

*Harold Nachison* for Staten Island Home Builders Association, Inc., and others, *amici curiæ.*

UGHETTA, Acting P. J.   The corporate plaintiff owns property abutting Donley Avenue in Staten Island, Richmond County of the City of New York.   The city has refused it a building permit upon the ground that " Street giving access [Donley Avenue] is not on the official map."   There were other objections which do not concern us since the city admits that they have been satisfied. The premises, including the subject portion of Donley Avenue, are set forth on a subdivision map which has been approved by the Chief Engineer of the city's Board of Estimate and filed in the Register's office since September, 1926.   However, the city maintains that that map does not suffice and that issuance of the building permit is banned by section 36 of the General City Law which reads in part as follows:. " No permit for the erection of any building shall be issued unless a street or high-way giving access to such proposed structure has been duly placed on the official map or plan, which street or highway shall have been suitably improved to the satisfaction of the planning

board in accordance with standards and specifications approved by the appropriate city departments as adequate in respect to the public health, safety and general welfare for the special circumstances of the particular street or highway ''. Section 36 goes on to provide relief in cases of '' practical difficulty or unnecessary hardship '' by appeal to a Board of Appeals or other similar body empowered to pass upon application for zoning variances or exceptions. That section is part of article 3 of the General City Law (eff. April 30, 1926), which article offers a comprehensive scheme of establishing '' official '' maps and enforcing conformity of construction to such maps.

It is conceded that the City of New York has not prepared '' official '' maps of many areas in Richmond County, including the subject premises, in which there are existing streets. Moreover, the city had not invoked article 3 to deny permits to build next to such streets until July, 1960.

An important feature of the '' official map '' insisted upon by the city is that it set forth grade and elevation lines in fine detail. That refinement is lacking on the filed subdivision map of the subject premises. Thus, if the city were to alter the grade of Donley Avenue (and presumably that of other streets) the abutting structures might suffer detriment and their owners might seek '' change in grade '' damages. The city proposes in such cases to forestall the damages by refusing building permits and by suggesting two alternative remedies for those who wish to build. One remedy is for the builder to prepare, at his own expense, a map setting forth grade and elevation lines and to donate it to the city for approval and incorporation in the '' official map '' (also called the '' final '' map). He may then build in conformity with it. The other remedy is an appeal to the Board of Appeals. The inference is that on such appeal the permit shall eventually be issued but only after the city obtains a waiver of any damage attributable to a subsequent change in the street grade due to '' final '' or '' official '' mapping.

That approach presupposes that the city may invoke the restrictions of article 3, including section 36. The supposition is challenged by respondent corporation, which points to section 26, the first section of article 3. It is the section that authorizes a city to establish an '' official '' map under article 3. However, it also provides that that is to be accomplished by an ordinance or resolution which will make it the duty of an appropriate official to file with the appropriate Register a certificate showing that the city has established '' an official map or plan.'' It is stipulated that no such resolution has been passed and that no such certificate has been filed.

Nevertheless, the city maintains that it has substantially complied with the requirements for making such an election by reason of its enactment of section C26–2.0 of the Administrative Code. It also relies on its having established " official " maps for many years prior to the passage of article 3. Section C26–2.0 sets down the applicability of the City Building Code to private property and expressly does not provide " presumptively " for matters that are contained in the City Charter, and in the General City Law as well as in various other State and local laws. That is, it shows obeisance to the General City Law with respect to buildings in general. We fail to see how it demonstrates that the city has specifically chosen to accept the benefits and responsibilities of the " official " map provisions of article 3.

As to the city's practice of " official " map establishment, that practice shows that the city has endeavored through the years to fulfill responsibilities vested in it by mapping provisions of the New York City Charter (also referred to in § C26–2.0). As we shall see, those provisions rather than article 3 of the General City Law, provide the applicable and dispositive law of this action.

We also note that " official " map laws have been subjected to vigorous attack in the courts upon claims that they deprive persons of property without due process of law (see, e.g., *Headley* v. *City of Rochester,* 272 N. Y. 197; *Junius Constr. Corp.* v. *Cohen,* 257 N. Y. 393). Adoption of such laws is a grave step with respect to the property rights of the freeholders of a municipality. It is essential that the scheme be comprehensive and scrupulously followed. Even if one were to accept a principle of " substantial " compliance, there must be evidence by way of legislation albeit defective. A possible example of " substantial compliance " by defective legislation is provided by the facts of *Village of Lynbrook* v. *Cadoo* (252 N. Y. 308). There is no similar proof in this record.

Moreover, the applicable sections of the charters enacted by the Legislature and adopted by the City of New York since the original Charter of 1898 lead only to the conclusion that the city has continued to have its own statutory scheme of map establishment.

Preparation of the " map or plan of the City of New York " has been entrusted by the Charter to various city officials since 1898 (see L. 1897, ch. 378, §§ 432–443; L. 1901, ch. 466; 1938 New York City Charter, §§ 197, 198; L. 1962, ch. 998, § 21). Since 1916, ultimate approval of changes and additions has remained vested in the Board of Estimate. The most recent Charter has

apparently shortened the term " map or plan of the city of New York " to that of " city map."

Furthermore, since 1901, the Charter has also dealt with the problem of privately prepared subdivision maps. Section 1540 of the Charter required approval by the Board of Public Improvements before the streets set forth in such maps were deemed dedicated. In 1916 (L. 1916, ch. 513), section 1540 was changed to provide that no subdivision map would be accepted for filing in the Register of Deeds, unless it had been approved by the Borough President and transmitted to the Board of Estimate for approval. The subdivision map was to be either approved or disapproved by the Board of Estimate in 21 days, and its Chief Engineer might be authorized by resolution to approve or disapprove on behalf of the board. The statute went on to read as follows: " Unless such map is either approved or disapproved by the board of estimate and apportionment or its chief engineer within twenty-one days of its reception in the office of the secretary of the board, approved by the president of the borough, the secretary of the board shall certify such fact in writing upon such map and such map shall be received for record without such approval. Every such map shall be prepared, approved and certified in quadruplicate and shall be filed as follows: one copy thereof, as above provided, in the office in which conveyances of real estate are required to be recorded in the county in which the land shown thereon is situated; one copy thereof in the office of the corporation counsel; and one copy thereof in the office of the president of the borough in which the land shown on the map is situated, and one copy thereof in the office of the secretary of the board of estimate and apportionment. No street, avenue, highway or public place, the layout of which has not been approved as provided in this section, shall be deemed to have been accepted by the city of New York as a street, avenue, highway or public place, unless such street, avenue, highway or public place shall lie within the lines of a street, avenue, highway or public place shown upon the duly adopted and filed final maps of the city of New York."

That section has been renumbered and continued into the present Charter with some changes (see L. 1962, ch. 998; New York City Charter, § 202). They primarily involve requiring preliminary approval by the City Planning Commission and lengthening of the time for Board of Estimate action.

The terms " official map " and " final map " are used interchangeably in the briefs. We deem the " final map " referred to in former section 1540 of the City Charter to be what is now the

" city map " (formerly " map or plan of the city of New York "). If that were not so, the reference would be meaningless. One must also conclude from the above-mentioned sections that those terms are not the same in law as the " official map " authorized in article 3 of the General City Law. The city has not made them such by appropriate resolution. Rather, it has been content to prepare and enforce the " city map " pursuant to different acts of the Legislature. It follows, therefore, that Special Term was correct in adjudging that section 36 of article 3 of the General City Law has no effect in the City of New York.

The judgment appealed from also declares in the third decretal paragraph that Donley Avenue " in any event would be deemed to be on the Official City Map under Section 29, Article III of the General City Law." Section 29 deems approval of the layout of streets under provisions of law other than those contained in article 3 to be changes in the official map and subject to all the provisions of article 3. Since that section can go into effect only upon adoption by the city of article 3, it has no bearing on the standing of Donley Avenue in the City of New York.

But former section 1540 of the 1898 City Charter, as amended, provided authority for the establishment of Donley Avenue on the " city map." Accordingly, we modify the above decretal paragraph to state that " Donley Avenue is deemed to be on the city map."

The subdivision map on which the street is set forth (Map of Fox Hills Colony, Fourth Ward, Borough of Richmond, New York City) bears the stamp of approval of (1) the President of the Borough of Richmond; (2) the Assistant Engineer in charge of topography; and (3) the Secretary of the Board of Estimate signifying the approval of the Chief Engineer. All of such approvals took place in August and September, 1926. The last-mentioned stamp of approval was expressly based on former section 1540 of the City Charter (presently New York City Charter, § 202).

The city maintains that that section and approval thereunder merely permit filing of the map and sale of the lots pursuant to section 334 of the Real Property Law. It contends that if approval pursuant to former section 1540 carried " an overriding significance of final mapping, the statute would not leave it to inference, but would speak plainly." But what other import can there be to such approval? Even article 3 which the city now seeks to invoke (as well as section 278 of the Town Law and section 179-m of the Village Law) provides for submission of privately made subdivision maps. Section 34 of article 3 provides that, upon planning board approval: " the streets, high-

ways and parks shown on such plat shall be and become a part of the official map or plan of the city." The purpose of former section 1540 of the City Charter was similar. It was to give property owners a remedy in the event of a hiatus in the " city map " and to give the city control in planning. The penalty in the City Charter for failing to obtain approval pursuant to its provisions was clearly spelled out. It was that the rights of the owner and his successors in interest would be subject to whatever it subsequently set forth in the " city map ".

The procedure in the City Charter differs in some respects from that offered by article 3 of the General City Law. An important difference is that, under article 3, approval of the subdivision map is required for filing. On the other hand, the Charter prohibited filing only in cases of failure to submit the map or in cases of actual disapproval. A very recent change (New York City Charter, § 202, eff. Jan. 1, 1963) permits filing " only for record " of disapproved maps.

In effect, the city now proposes to withdraw approval given pursuant to the procedure then set down in its Charter and to enforce the more stringent requirements of article 3 of the General City Law. In addition, it seeks to deny a building permit on the basis of section 36 of article 3, but it will not admit that it accepted the map on the basis of section 34 thereof. In view of the comprehensive and interrelated nature of these mapping procedures, it cannot be that a municipality may choose to be bound only by those provisions which presently suit its purposes.

The city also contends that former section 1540 of its Charter cannot be construed to have permitted its Board of Estimate to delegate to its Chief Engineer the power to approve maps for incorporation in the " city map ". It is not denied that the board has passed a resolution conferring such authority upon him. Furthermore, there are minutes of the Board of Estimate to the effect that the Chief Engineer approved the instant subdivision map as a " proper one " and " with the understanding that the treatment now proposed will be subsequently incorporated in the City plan." Therefore, inclusion of the map in the " city map " is expressly indicated. We reject the suggestion in the city's argument that former section 1540 contained an invalid delegation of legislative power to the Chief Engineer.

We similarly reject the argument that section 39 of the General City Law (eff. March 29, 1938) made the provisions of article 3 mandatory in all cities. That section is clearly designed to be a " separability " clause to prevent invalidation of the entire article 3 (and hence of an entire map) in the event that one of the parts be declared invalid.

The city cites several prior cases in which the applicability of article 3 of the General City Law to land within its boundaries is claimed to have been assumed (see, e.g., *Junius Constr. Corp.* v. *Cohen,* 257 N. Y. 393; *Matter of Perosi Homes* v. *Maniscalco,* 15 A D 2d 563; *Platt* v. *City of New York,* 276 App. Div. 873; *S. S. Kresge Co.* v. *City of New York,* 275 App. Div. 1036; *Petterson* v. *Radspi Realty & Coal Corp.,* 264 App. Div. 903, 265 App. Div. 824, affd. 290 N. Y. 645; *Goldstein* v. *Stern,* 32 Misc 2d 779; *Rand* v. *City of New York,* 3 Misc 2d 769; *Bibber* v. *Weber,* 199 Misc. 906; *Grill* v. *Driad Constr. Corp.,* 34 N. Y. S. 2d 593). Suffice it to say that the question has not been passed upon in those cases. As a matter of fact, the court stated in *Junius Constr. Corp.* v. *Cohen* (*supra,* pp. 398–399): " We find it unnecessary to determine for the purpose of this appeal whether the official map on file in the city of New York, a map prepared by the local authorities in accordance with section 442 of the charter of the city, is such a map as was contemplated by the Legislature in the enactment of section 26 of the General City Law."

We have carefully considered the other points raised by counsel and find in them no grounds for reversal.

Accordingly, the judgment should be modified in accordance with this opinion and as so modified, the judgment should be affirmed, with costs to plaintiff.

CHRIST, BRENNAN, HILL and HOPKINS, JJ., concur.

Judgment modified by striking out the third decretal paragraph and by substituting therefor the following paragraph: " Ordered, adjudged and declared that Donley Avenue, County of Richmond, City of New York, is on the ' city map ' under sections 198 and 202 of the New York City Charter and sections 438 to 444 and 1540 of the New York City Charter that obtained in September of 1926." As so modified, the judgment is affirmed, with costs to plaintiff.