Bernard S. Meyer, J.
This action grows out of an agreement executed March 13, 1970, whereby plaintiffs subleased a car wash then operated by defendant, with an option, good for six months, to acquire the lease, building and equipment. The parties agree that the option was exercised, though they disagree concerning what act constituted such exercise. Plain *341 tiffs sue for (1) damages for fraud, (2) restitution after rescission and (3) punitive damages. Defendant counterclaims for (1) specific performance "by plaintiffs of the option agreement, (2) damage to the property in the sum of $150,000, and (3) breach of contract resulting in damage to the premises. After trial before the court without a jury the third counterclaim is dismissed for failure of proof of damages and, for the reasons hereafter stated, the first and third causes of action and the two remaining counterclaims are dismissed and plaintiff is awarded judgment on the second cause of action.
In paragraph tenth of the agreement plaintiffs made known to defendant their intention “ to install therein two (2) Mechanical Man Car Wash Mfg. Co., Inc. automatic car wash units.” Three days after the agreement was executed, plaintiffs engaged a contractor and applied for a building permit and on May 6, 1970 received the necessary permit. On May 14, 1970, however, the permit was revoked because issued in error, the premises being “in the Urban Renewal area and no permits were to be issued ”. At the time of revocation the alteration, which cost $9,984.18, was within four hours of completion. Though the contract called for a closing 30 days after exercise of the option, no closing had taken place when the alteration began or when the permit was revoked. By letter dated July 27, 1970, defendant’s attorney fixed the time of closing for August 27, 1970, but plaintiffs, who had delivered the keys to defendant in July, failed to appear at the closing.
Plaintiffs’ fraud cause of action is predicated upon (1) the fact that defendant was seven months in arrears in his rent to the overlandlord, but represented in the agreement that ‘ ‘ seller is not in default under the lease and has fully complied with and is presently in full compliance with all his obligations under the lease ”, and (2) defendant’s failure to disclose that the premises were in an urban renewal area. Defendant argues, as to the first, that his lease with the overlandlord gave him 30 days after notice in writing in which to cure any default in payment of rent, and as to the second, denies knowledge of the fact.
Defendant’s contention that he was not in default under the overlease is specious in light of the representation of present “ full compliance with all his obligations under the lease ” and of the fact that the 30-day grace period by its terms was measured from notice after a “ default in payment of rent.” The failure of the overlandlord to give notice affected his remedy but did not convert the default into compliance. The falsity of *342 the representation caused plaintiffs no damage, however, their difficulties having arisen not from any attempt by the overland-lord to oust them or defendant, but from the invalidation of their building permit. Absent resulting damage, plaintiffs cannot recover because of defendant’s default under the overlease.
Existence of the urban renewal area was the cause of damage to plaintiffs, as hereafter discussed, and the court has no hesitancy, in light of the testimony of the urban renewal manager, in finding that defendant knew that his premises were in the urban renewal area and were scheduled for demolition and that, therefore, a building permit for the contemplated alteration could not be obtained. The difficulty with this ground as a basis for recovery on the first cause of action is, however, that defendant made no representation. The agreement was prepared by plaintiffs ’ attorney. Though defendant had talked to an attorney during negotiations with plaintiff, it is clear that that attorney never saw or passed upon the agreement. The agreement is, therefore, to be construed, if construction is required, strictly against plaintiffs (Gillet v. Bank of America, 160 N. Y. 549, 554-555).
Though the first paragraph of the agreement set forth twelve separate and distinct representations and warranties, none related to the proposed alteration. As to that the agreement contained a separate provision which characterized obtention of a building permit not as the predicate for execution of the agreement, but for the possible future exercise by plaintiffs of the option. The language of that provision was: “ BUILDING PERMIT tenth : seller acknowledges that purchasers’ exercise of this option to purchase depends greatly upon purchasers being able to obtain a permit to extend the building in order to sufficiently enable purchasers to install therein two (2) Mechanical Man Car Wash Mfg. Co., Inc. automatic car wash units and in regard [sic], seller agrees, at any time after the date of this agreement, at purchasers’ request, to execute any instruments and give all assistance necessary to assist purchasers in obtaining any governmental permits necessary to remodel or extend the building. ’ ’ Moreover, paragraph twelfth of the agreement, the merger clause, recited that the agreement 1 ‘ was entered into after full investigation, neither party relying upon any statement or representation not embodied in this agreement made by the other. ’ ’ Paragraph twelfth is, in fact, identical in language with one of the sentences of the merger clause involved in Danann Realty Corp. v. Karris (5 N Y 2d 317, 320), and in light of that language, of the express reference *343 in paragraph tenth, in language not constituting a representation, to the building permit, and of the fact that the agreement was drawn by plaintiffs ’ attorney, it must be held that plaintiffs cannot be heard to say, as plaintiff De Meo testified, that they executed the agreement in reliance upon defendant’s oral representation that plaintiffs would have no trouble in obtaining a permit for installation of the Mechanical Man equipment (Danann Realty Corp. v. Harris, supra; see Barash v. Pennsylvania Term. Real Estate Corp, 26 N Y 2d 77, 86).
Nor is defendant’s failure to disclose a sufficient basis to sustain the first cause of action. “ It is not fraud for one party to say nothing on the subject where no confidential or fiduciary relation exists and where no false statement or acts to mislead the other are made,” (Amend v. Hurley, 293 N. Y. 587, 596; accord: Moser v. Spizzirro, 31 A D 2d 537, affd. 25 N Y 2d 941; Perin v. Mardine Realty Co., 5 A D 2d 685, affd. 6 N Y 2d 920; Foelsch v. Eaton, 7 A D 2d 730). It is not suggested that there was any fiduciary relation between plaintiffs and defendant, nor is there any evidence here of misleading words or acts on the part of defendant that would convert defendant’s silence into deception (cf. Donovan v. Aeolian Co., 270 N. Y. 267, 271; Junius Constr. Corp. v. Cohen, 257 N. Y. 393, 399-400), except the statement, above referred to, that plaintiffs would have no trouble obtaining a permit. As already noted, however, that statement, if made (and the evidence that it was is far from clear and convincing) cannot avail plaintiffs in light of the contract provisions. It follows that the first and third causes of action must be dismissed.
It does not, however, follow that plaintiffs are without remedy or that defendant is entitled to succeed on his counterclaims. The second cause of action alleges and the proof establishes that plaintiffs rescinded the agreement and demanded return of the $5,000 paid by them for the option. “It is universally recognized that there is a right of rescission for a unilateral mistake if the mistake was known to the other party at the time of the negotiating of the contract and was not corrected by it ” (Sheridan Drive-In v. State of New York, 16 A D 2d 400, 405, and authorities cited therein). Defendant knew that a building permit for the alteration could not be obtained and knew from paragraph tenth of the agreement the plaintiffs were acting under the mistaken belief that it could be. While it is true that plaintiffs rescinded for fraud rather than mistake and so alleged in their complaint, defendant has suffered no harm by the statement of'the wrong reason for plaintiffs’ legally per *344 missible act, and the pleadings may properly he conformed to the proof (CPLR 3025, snbd. [c]). The agreement having been rescinded promptly after the correct facts were discovered, defendant is not entitled to specific performance (see Roth-miller v. Stein, 143 N. Y. 581, 592), and plaintiffs became entitled to restitution (Sheridan Drive-In v. State of New York, supra), but were obligated to restore the property to defendant in the condition in which it was when leased, except as the court otherwise decrees in the exercise of the power to adjust the equities granted to it by CPLR 3004. Plaintiffs are, therefore, entitled to judgment on their second cause of action and on the first counterclaim.
The judgment which plaintiffs ask for covers not only return of the option payment hut also legal and architects’ fees, the building permit fee and the cost of the alteration. They are not entitled to the cost of the alteration, because that cost resulted from their having proceeded with the alteration before closing on the option had been held, not from the agreement. Nothing in the agreement authorized alteration of the building by plaintiffs prior to closing, nor can the court find on plaintiff De Meo’s equivocal testimony that he ‘1 notified ’ ’ defendant that plaintiffs were going ahead with the alteration that defendant authorized their so doing. They are entitled to return of the option payment and to recover the building permit fee and legal and architects’ fees required to obtain the permit, though not to counsel fees paid for negotiation of the agreement or formation of a corporation. The damages to which plaintiffs are thus entitled total $5,913.50.
The more difficult problem is what, if anything, defendant is entitled to by reason of the alteration of the building. As already noted plaintiffs committed a technical trespass in proceeding with the alteration when they did, hut since that trespass could have resulted in no damage to defendant had not plaintiffs become entitled to rescission, defendant’s rights with respect to the trespass are subject to the power of the court to adjust the equities in decreeing rescission (CPLR 3004). To hold otherwise would be to permit defendant to take advantage of his own failure to call plaintiffs’ attention to their mistake of which defendant had knowledge, and effectively negate CPLR 3004. The second counterclaim is, therefore, dismissed.
That dismissal does not dispose of the issue, however; there remains the question whether defendant is entitled to any offset by reason of the fact that the building has .not been restored to *345 him in the same condition it was when the agreement was executed. The court concludes that he is not. Defendant testified that, as a result of the alteration, two bays could not be used and the car wash, therefore, could not be operated profitably and was not operated by him after the keys were returned to him in July, 1970. However, his admission that rent for seven months was unpaid when the agreement was executed indicates that the oar wash was not being operated profitably at that time. The extent to which the alteration caused a decrease in income is, therefore, unknown.
Defendant did elicit from plaintiffs’ general contractor on cross-examination testimony that to demolish the work he did and return the building to its original form would cost about $8,000. Since the Urban Renewal Agency is proceeding with condemnation and will demolish the building it is clear that restoration of the building will not in fact take place. Under those circumstances, what, if any, adjustment is defendant entitled to because of the alteration? In the somewhat analogous situation of a tenant’s liability for breach of the covenant to repair when a subsequent tenant has entered into possession and made the repairs, the rule is that the prior tenant is nonetheless liable for the cost of repair (Farrell Lines v. City of New York, 30 N Y 2d 76); but that rule is predicated on the facts that the lessor will have a narrower market for his property in its state of disrepair, that a lower rent was fixed because of the covenant to repair than it would have been without it, and that lessor’s cause of action vested prior to the subsequent tenant’s repairs. Here, the property being in process of condemnation, there is no market for it other than the Urban Renewal Agency; it has not been shown that the amount defendant will receive for the improvements on condemnation (a right preserved to him under the overlease) has been affected in any way by the alteration; and as above noted the technical trespass committed by plaintiffs is under the circumstances of this case subject to the court’s power to adjust the equities. The court concludes that unjust enrichment will be avoided and the equities reasonably adjusted if no allowance is made to defendant for the cost of restoring the building to its original condition.
Plaintiffs are, accordingly, awarded judgment on the second cause of action in the amount of $5,913.50.