OPINION OF THE COURT
Edwin Kassoff, J.
This action by a contract vendee for the return of its down payment raises issues of marketability and insurability of title to certain improved real property located at 86-88 Sancho Street, Holliswood, in the County of Queens. Defendants, record owners, have counterclaimed for damages for breach of contract. A trial without a jury was held before me and, from the credible evidence adduced thereat, I find the following:
On July 3, 1979, the attorneys for the sellers forwarded to the purchaser’s attorney an original and two copies of the proposed contract of sale, together with the prior certificate and report of title issued to defendants by US Life Title Insurance Company and a survey dated October 25, 1972. The contract of sale was the standard *521 form New York Board of Title Underwriters contract with a rider. Upon execution of the contract, the purchaser made a down payment in the sum of $19,500 which, pursuant to the contract, was to be held in escrow by the sellers’ attorney “until the purchaser obtains a title report showing marketable title.” The exception sheet prepared by plaintiff’s title company (First American Insurance Company of New York) listed as an exception: “Approximately 5 feet of the premises described, lies in the bed of Sancho Street, as the same is laid out on the Final Topographical Map of the City of New York. This portion of the premises is subject to the restrictive use imposed by the provisions of Section 35, as amended by Section 35A, of the General City Law.”
By letter dated August 27, 1979, plaintiff rejected the title based on this exception and requested the return óf its down payment. Without clearing the exception, sellers proceeded to title and took plaintiff’s default. The down payment has since been deposited in the Manhattan Savings Bank, the bank book evidencing that sum has been deposited with the clerk of this court; the sellers’ attorneys discharged as escrow agent; the lis pendens filed against the property has been canceled and the property has been resold at a lower price.
The issue posed is whether title is rendered unmarketable by the fact that five feet of the property’s frontage lies in the bed of a mapped or “paper street”, or, if unmarketable, was this restriction specifically provided for by the contract. Case law indicates that the restrictive use imposed by section 35 of the General City Law would not render title unmarketable unless a substantial portion of the property lies within the bed of the street and the property would be rendered useless thereby or there is evidence of misrepresentation or a violation of the statute.
In Goldstein v Stern (32 Misc 2d 779), an action for the return of a down payment, the contract of sale provided that five feet of the property were in the bed of a mapped street subject to the restricted use imposed by section 35 of the General City Law. In actuality, 10 feet were af *522 fected, although the city stated that only 5 feet would ever be utilized. The court stated (supra, p 781): “A restriction imposed by the provisions of section 35 of the General City Law is an encumbrance upon real property and a variance of five feet between the contract provision and the Final Topographical Map of the City of New York would be sufficient to warrant the rescinding of such contract * * * since the de minimus rule does not apply under these circumstances * * * If the misrepresentations were innocent a buyer still may rescind and sue to recover the consideration paid.”
In Petterson v Radspi Realty & Coal Corp. (264 App Div 903, affd 290 NY 645), a proposed street cut six feet into the front line of the property rendering the driveway unusable because of the resultant steepness of the grade. The length of the proposed street was contrary to the description in the deed and the court permitted the plaintiffs to rescind. In Junius Constr. Corp. v Cohen (257 NY 393), Chief Judge Cardozo permitted rescission when the property would become virtually unusable by proposed street openings or widenings which the sellers had misrepresented. Such misrepresentation caused the proposed street to create an encumbrance which rendered title unmarketable.
In the instant case, there were no misrepresentations of any kind present, nor is there any possibility of the five feet restrictive use rendering the property unusable in part or in whole.
In Litt v City of New York (37 Misc 2d 406), plaintiff had refused to accept title, claiming it was rendered unmarketable because a substantial part of the lot was subject to a proposed street widening pursuant to section 35 of the General City Law. A brochure issued on the premises by the defendant seller had indicated that only a small portion of the premises encroached upon the street bed. The memo of sale (p 407) had provided the property be conveyed “ ‘free and clear of liens arid encumbrances, except as herein stated’ ”. The court held that pursuant to the sale memorandum the plaintiff was *523 entitled to marketable title and that the encumbrance rendered title unmarketable.
In the instant case, a substantial portion of the property is not affected by the encumbrance, nor was there any evidence that the defendant had represented the portion of the premises lying within the street bed was less than the five feet it actually was.
In Bibber v Weber (199 Misc 906, affd 278 App Div 973), an action to recover damages for breach of covenants in the deed, the defendant conveyed property to the plaintiff by a full covenant and warranty deed. A building on the premises encroached upon the street as set forth on the city map. The defendant had erected the building without first obtaining a permit pursuant to section 35 of the General City Law. The deed contained a clause similar to paragraph 2 of the rider to the instant contract. The clause provided (p 908) that the plaintiff takes the property “[sjubject to covenants and restrictions, if any, of record affecting said premises, not violated by the existing building or buildings thereon”. The court held that this clause did not mean plaintiff had taken the land subject to section 35, since a section 35 highway easement is neither a covenant nor restriction, and even if it were it was violated by the building. The court further held that the easement was an encumbrance which rendered the title unmarketable. Bibber establishes that a highway easement created pursuant to section 35 of the General City Law is an encumbrance. The issue in this case then becomes whether the plaintiff contracted to buy the proper subject to this encumbrance. It is apparent that if section 35 were violated by the encroachment of an existing building, title would be rendered unmarketable, as in Bibber.
In the present case, plaintiff concedes, however, that there are no existing encroachments upon the front five feet, which is subject to the restrictive use imposed by sections 35 and 35-a of the General City Law. First American, in its letter of September 24, 1979, states that: “none of the existing buildings or improvements are in violation of Section 35 or 35-a of the General City *524 Law and Company will insure same if so requested by the purchasers.”
The contract is very clear, in that the down payment was to be held in escrow until “purchaser obtains a title report showing marketable title.”
The court finds that the defendants have tendered a marketable title.
Furthermore, even if the title were rendered unmarketable by the encumbrance, the court finds that the parties intended the sale to be subject to the encumbrance of section 35 of the General City Law and that by refusing to take title plaintiff has breached the contract.
This finding is derived from the credible evidence presented at trial. Along with the original and the instant contract of sale, defendants’ attorneys forwarded to the plaintiff’s attorney a copy of the prior certificate and report of title issued by US Life Title Insurance Company and a survey by Louis Montrose dated October 25, 1972. The prior title report contained the identical exception and the survey reveals the city map line inside the record. It appears that plaintiff’s attorney communicated these concerns to his client. Further, the concern of plaintiff’s attorney for a new certificate of occupancy could only have been precipitated by knowledge acquired by an examination of the prior title policy. Thus, prior to signing the contract, the plaintiff and his attorney were aware of, or should have been aware of, the encumbrance, and they are therefore estopped from claiming the title tendered was unmarketable.
Turning then to defendants’ counterclaim for damages defendants are entitled to damages in excess of plaintiff’s down payment (Leading Bldg. Corp. v Segrete, 60 AD2d 907). An examination for damages which might appropriately be awarded indicates that they do not exceed the down payment (Colonial Diversified v Assured Holding Corp., 71 AD2d 1011; Leading Bldg. Corp. v Segrete, supra; see, also, Kjellgren Realty Corp. v Galop, Inc., 205 NYS2d 765). The court excludes from the appropriate damages the loss of the use of the purchase price, the rental of a new apartment and attorney’s fees.
*525 Accordingly, judgment is granted in favor of the defendants dismissing the complaint and extinguishing the vendee’s lien. Judgment is granted on defendants’ counterclaims to the extent that defendants shall retain the down payment of $19,500 as damages.