The **REPUBLIC OF LIBERIA** and the **Liberian Mining Corporation, Inc., Plaintiffs,**

v.

Nathaniel J. **BICKFORD, Esq.** and **Lankenau, Kovner & Bickford, a partnership organized under the laws of New York, Defendants.**

No. 91 Civ. 6887 (KC).

United States District Court, S.D. New York.

March 24, 1992.

As Amended July 28, 1992.

Kathleen Milton, Reichler & Soble, Washington, D.C., and Jeffrey C. Slade, Meister, Leventhal & Slade, New York City, for plaintiffs.

Peter Contino, Rivkin, Radler & Kremer, Uniondale, N.Y., Peter C. Sprung, Asst. U.S. Atty., S.D.N.Y., and Lester S. Hyman, Swidler & Berlin, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

Shortly before the civil war in Liberia that began in December, 1989, plaintiff, the wholly state-owned Liberian Mining Corporation ("LIMINCO"), retained as United States legal counsel defendants Nathaniel J. Bickford and Lankenau, Kovner and Bickford (collectively "Bickford"). Bickford also acted as U.S. counsel to plaintiff, the Government of Liberia, in connection with mining matters at the request of the Minister of Justice of Liberia. In its capacity as counsel to the Liberian Government, Bickford received certain property on behalf of the Republic of Liberia. Plaintiffs allege that such property includes certain monies amounting to $1,681,000 paid to LIMINCO on June 20 and 21, 1990.

In their action against Bickford, plaintiffs move for judgment on Counts I and II on the pleadings, or, in the alternative, partial summary judgment. Count I of plaintiffs' action demands an accounting of certain chattel allegedly in the hands of defendants. Count II of the plaintiffs' action is for the recovery of this chattel.

The plaintiffs are represented in this action by counsel to the Interim Government for National Unity of the Republic of Liberia ("Interim Government"). Claiming to be the legitimate representative of the Republic of Liberia and LIMINCO, the National Patriotic Reconstruction Assembly Government ("NPRAG") moves to intervene in this action.

Bickford moves to stay plaintiffs' action and to dismiss Count III pursuant to Federal Rule of Civil Procedure 12(b)(6). In Count III, plaintiffs seek damages for defendants' alleged conversion of the chattel.

## I. FACTS

### A. *Background*

The following account of the political status of Liberia is derived from the statement of interest in this case filed by the United States Government:

In December, 1989, a civil war broke out in Liberia when forces from a group calling itself the National Patriotic Front of Liberia, led by Charles Taylor, invaded Liberia from the Ivory Coast to attack targets in northeastern Liberia. The Armed Forces of Liberia, under the direction of then-President Samuel K. Doe, sent troops to confront the insurgents. Over the next several months, the insurgency spread throughout Liberia.

In August, 1990, Liberian political parties and interest groups held a conference in Banjul, The Gambia, in order to support the implementation of a peace plan proposed by the Economic Community of West African States ("ECOWAS") Standing Mediation Committee. The United States has supported the implementation of the ECOWAS peace plan.

The Interim Government was formed at the Banjul conference, and Amos Sawyer was named as president of the Interim Government. In late August or early September, 1990, the Economic Community of West African States Military Observer Group ("ECOMOG") sent a five-nation West African peace-keeping force to Monrovia.

On September 12, 1990, President Doe was killed and his government collapsed. The Interim Government entered Monrovia in late November, 1990, and in coordination with ECOMOG, began gradually to assert administrative and political control over the ravaged city.

From March 15 to April 20, 1991, an All-Liberia National Conference was held in Virginia, Liberia, pursuant to the ECOWAS peace plan. Liberian political parties, interest groups, and rival factions, as well as observers from the ECOWAS Standing Mediation Committee, United Nations, Organizations of African Unity, diplomatic corps, and international press, attended the conference. Although delegates representing NPRAG walked out of the conference on March 27, 1991, the conference continued to its conclusion on April 20, at which time it reelected Amos Sawyer as president of the Interim Government.

Throughout 1991, the Interim Government represented Liberia at meetings of ECOWAS, the Organization of National Unity, and the United Nations. President Sawyer travelled to the United States in September and October of 1991, where he was received by the Acting Secretary of State in Washington and, as Liberia's Head of State, delivered an address to the United Nations' General Assembly in New York.

The Court notes that throughout 1991 in at least three lawsuits, the United States has filed statements of interest pursuant to 28 U.S.C. § 517 stating that it was consistent with the foreign policy of the United States for the Interim Government to present claims and defenses on behalf of the Government of Liberia in those disputes. Plaintiffs' Exhibits A, B, and G. The Court also notes that on November 24, 1986, Her Excellency Eugenia A. Wordsworth–Stevenson presented her credentials to the President of the United States, and that, according to counsel, she has continued to be accredited as the Ambassador of the Republic of Liberia to the United States. Plaintiffs' Exhibit C.

### B. *Defendants' Account of the Transfer of Funds from the Government of Liberia to Defendant*

Bickford asserts without affidavit or exhibit that in June, 1990, then-Liberian Min-

ister of Finance Emanuel Shaw II, gave the money in dispute to Bickford for safekeeping until a new Liberian government was established. In Shaw's letter to Bickford, Shaw purportedly asserted that he retained authority over the disputed funds at least until a new Liberian government received the formal recognition of the governments of certain enumerated countries.

### C. *The Written Exchanges Between the Parties to this Action*

On February 22, 1991, Interim Government Minister of Finance S. Byron Tarr wrote a letter to Bickford, in which Tarr stated that LIMINCO expressly disavowed any prior authorization that Bickford may have received to act on behalf of LIMINCO or to dispose of any funds or assets belonging to LIMINCO or the Liberian Government. Tarr also wrote that Bickford was not authorized to transfer or dispose of the $1,681,000 held by Bickford, and that LIMINCO and the Liberian Government would hold Bickford responsible for unauthorized disposition of the money. Tarr also indicated that the Interim Government's attorneys were members of the firm of Reichler & Soble. Defendants' Exhibit E.

On February 25, 1991, Bickford wrote to Tarr to explain Bickford's inability to make the final determination as to the claims of any of the contestants for legitimacy as the government of the Republic of Liberia. Bickford stated that the decision as to which government was entitled to the funds "must be made by others...." Defendants' Exhibit F.

On May 24, 1991, Tarr wrote Bickford to renew Tarr's request for an accounting and freezing of the money controlled by Bickford. Tarr also added requests for access to records on Bickford's dealings on behalf of the Republic of Liberia. Tarr attached to the letter a statement of the interest of the United States pursuant to 28 U.S.C. § 517 with respect to an unrelated matter in a federal district court in New Jersey, in which matter the Government of Liberia was a party. The statement of interest said, among other things,

[i]n the present case, it would be consistent with the foreign policy interests of the United States for this Court to confer standing upon the Interim Government to present claims and defenses for the defendant the Republic of Liberia for the purposes of resolving the instant action. Defendants' Exhibit G.

On October 15, 1991, the Republic of Liberia and LIMINCO filed the instant action. On November 20, 1991, the Court held a pre-motion conference at which all the parties to the instant action, as well as counsel to the NPRAG, were present. At the pre-motion conference, counsel for NPRAG stated that he disagreed with plaintiffs' argument that the Interim Government was the appropriate representative in the instant action by virtue of the U.S. Department of State's earlier statements of interest in the above-mentioned New Jersey action and other actions in which the Republic of Liberia was a party. Counsel for NPRAG argued that those actions did not involve Liberia's recovery of assets and, therefore, differed from the instant action. Transcript of November 20, 1991 pre-motion conference, attached to letter of the Court to the Honorable Edwin D. Williamson Dated December 31, 1991, at 21.

On December 31, at the parties' request, the Court sent a letter to the Honorable Edwin D. Williamson, the legal advisor of the United States Department of State. The letter requested the Department of State to "submit a statement to this Court setting forth its views on the standing issues raised by the enclosed transcript" of the pre-motion conference held on November 20, 1991. The Court sent copies of the letter to counsel.

On January 24, 1992, the United States filed a statement of interest in this action. The statement was virtually identical to the above-referenced statement filed in the action in the district court in New Jersey in 1991; the United States endorsed the Interim Government's standing in the instant

action and made no mention of NPRAG's potential standing.

## II. DISCUSSION

### A. *Plaintiffs' Motion for Partial Summary Judgment, NPRAG's Motion to Intervene, and Bickford's Motion for Stay of the Action*

 It is well established that "who is the sovereign, *de jure*, or *de facto*, of a territory is not a judicial, but a political question, the determination of which by the legislative and executive departments of any government conclusively binds" the courts. *Jones v. United States*, 137 U.S. 202, 212, 11 S.Ct. 80, 83, 34 L.Ed. 691 (1890). Furthermore, a basic principle of international law is that a change in a government's leadership works no change in the national sovereignty or its rights. *The Sapphire*, 78 U.S. [11 Wall.] 164, 168, 20 L.Ed. 127 (1871).

The Second Circuit has recently held that a non-recognized government could sue in a U.S. Court because the executive branch had "evinced a willingness to permit [the government] to litigate its claims in the U.S. forum." *National Petrochemical Co. of Iran v. The M/T Stolt Sheaf*, 860 F.2d 551, 555 (2d Cir.1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 840 (1989). The Court found that the U.S. Government had evinced a willingness to permit the Khomeni Government of Iran, which the U.S. did not formally recognize, to litigate in a U.S. forum because of 1) both countries' participation in international dispute resolution sessions; 2) the maintenance of a treaty of amity and consular rights between the two countries; and 3) most importantly, the U.S. Government's statement that U.S. foreign policy was consistent with giving access to U.S. courts to the Iranian Government for the purpose of suing in that action. *Id.*

Plaintiffs' motion presents two preliminary issues. First, does the Republic of Liberia own the funds in dispute? Second, does the Interim Government, which lacks formal recognition by the U.S., have standing to represent the government of Liberia? We answer these questions affirmatively.

As to the first question, Bickford does not contend that the funds belong to any entity other than the Republic of Liberia. Therefore, there is no dispute that the Republic of Liberia owns the funds in dispute.

 As to standing, the United States has stated its interest in our conferring standing upon the Interim Government of Liberia to represent the Republic of Liberia in this action. We defer to the executive branch's statement in this matter, as we find the relevant circumstances in this case sufficiently similar to those in *National Petrochemical.*

 As to NPRAG's motion, the U.S. Government was fully apprised of NPRAG's desire to intervene before the U.S. Government issued its statement of interest in this case. In the Court's letter to the Department of State, the Court made reference to the attached transcript of the pre-motion conference, at which NPRAG's counsel had explained his client's position. Despite having notice of NPRAG's desire to intervene, the U.S. Government did not mention NPRAG in its statement of interest other than briefly in the statement's factual recitation. Therefore, the Court finds that NPRAG lacks standing in this action.

Bickford no longer argues that the Court should stay this action until upcoming elections because the current political climate in Liberia purportedly renders uncertain the ownership of the funds at issue. Having determined ownership of the funds in dispute, we are confronted only with an issue of standing. The United States has here clearly stated that it is consistent with U.S. foreign policy for the Interim Government to represent the Republic of Liberia for purposes of this action. Accordingly, were we to continue to hold open the standing issue, we would be ignoring the executive's constitutional authority over foreign affairs. We therefore deny Bickford's motion for a stay of the instant action.

The parties do not dispute that Bickford has a fiduciary duty to account to the funds of the Republic of Liberia, or that

the $1,681,000 rightfully belongs to the Republic of Liberia. Even if the issues were in dispute, we find that Bickford owes a fiduciary duty to plaintiffs and therefore Bickford must make an accounting to them. Furthermore, we find that plaintiffs have a superior possessory interest in the funds to that of Bickford, and therefore that plaintiffs are entitled to return of the funds and related documents in Bickford's possession. The parties have pointed to no Liberian law that rebuts the common sense proposition that a governmental executive officer may properly revoke his predecessor's statements to an agent regarding the circumstances under which certain property may be released; we have no reason to believe otherwise.

Accordingly, Plaintiffs' motion for partial summary judgment is granted.

### B. *Bickford's Motion to Dismiss Plaintiffs' Conversion Claim*

■ In order to maintain an action for conversion, a plaintiff must demonstrate (1) plaintiff's legal ownership or immediate superior right of possession to property; and (2) defendant's unauthorized interference with plaintiff's ownership or possession of such property. *See Kahn v. Crames*, 92 A.D.2d 634, 459 N.Y.S.2d 941, 943 (1983) (citation omitted). Furthermore, where defendant originally possesses plaintiff's property lawfully, the plaintiff must have made a demand for a return of such property to the defendant, and the defendant must have refused to return the property. *Heneghan v. Cap-a-Radiator Shops*, 132 Misc.2d 936, 506 N.Y.S.2d 132, 134 (1986) (citation omitted).

On a 12(b)(6) motion, the plaintiff's allegations are to be taken as true and the complaint is to be viewed in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In Count III of their complaint, plaintiffs allege the following:

> 34. [D]efendants, acting in a fiduciary capacity as attorneys and agents for the Republic of Liberia and for certain parastatal entities, including LIMINCO, received, held, or otherwise controlled, either directly or indirectly, certain monies (including interest) and other property ..., said monies and other property being at all relevant times, including the present, legally or beneficially owned by the Republic or certain of its parastatal entities, including LIMINCO.

. . . . .

> 36. By Defendants' refusals to honor Plaintiffs' repeated demands for an accounting of the disposition of the monies (including interest) and other property (including documents, files, etc.) entrusted to Defendants' possession or control on behalf of the Republic and of certain Liberian parastatal entities, including LIMINCO, and by Defendants' refusal to surrender said monies and property to Plaintiffs or to give Plaintiffs access thereto, and by further reason of Defendants' assertion that said monies and other property shall remain at Defendants' sole disposition and control subject to the instructions of Emanuel Shaw, Defendants have wrongfully and intentionally converted the same.

■ In the above paragraphs, the plaintiffs have alleged their ownership of the property in dispute, Bickford's interference with plaintiffs' ownership of the property, and Bickford's refusal of plaintiffs' demand for the return of such property. Therefore, plaintiffs have stated a claim for conversion. Accordingly, we deny Bickford's motion to dismiss Count III of plaintiffs' complaint.

\* \* \* \* \* \*

In sum, we deny defendants' motion to dismiss Count III and NPRAG's motion to intervene. We further grant plaintiffs' motion for partial summary judgment. It is hereby ORDERED:

1. Defendants shall provide a complete accounting to plaintiffs with respect to all property, including monies, received by defendants on behalf of the Republic of Liberia or any of its parastatal entities, including LIMINCO, at any time. Such accounting must include at least the following information:

a. a description of the nature and value of all property, including monies, received by defendants on behalf of the Republic of Liberia or any of its parastatal entities, including LIMINCO, the dates on which that property was received, and the reason for its being entrusted to defendants.

b. the current location of all property referred to in subparagraph a., above, including the locations and numbers of all bank accounts in which any such property is found, and the amounts currently in such accounts; and

c. the disposition of all property, including monies, referred to in subparagraph a., above, including the date of such disposition, the party receiving the property, the person(s) authorizing the transaction, and the reason for the transaction.

2. As part of the above-mentioned accounting, defendants shall also produce to plaintiffs the following documents:

a. all bank records related to any account(s) in which monies received by defendants on behalf of the Government of Liberia or any of its parastatals, including LIMINCO, were held at any time. Such records must cover the entire period(s) in which the monies were in such accounts;

b. all other records and other documents maintained by defendants, or any other person or entity and in the possession of defendants, regarding property, including monies, received by defendants on behalf of the Government of Liberia or any of its parastatals, including LIMINCO. Such records are to include all documents regarding the disposition of such property; and

c. all documents, files, records or other information collected or created by defendants in their capacity as counsel to the Republic of Liberia or any of its parastatal entities, including LIMINCO.

3. Defendants shall complete their accounting to plaintiffs within thirty (30) days of the date of this Order.

4. Plaintiffs shall be entitled to request a further order from this Court should they believe in good faith that the accounting provided by defendants in accordance with this Order is incomplete, or is otherwise insufficient to establish either the value of the property, including monies, currently held by defendants on behalf of the Republic of Liberia and its parastatal entities, or the disposition of such property no longer held by defendants.

SO ORDERED.