Gerard G. **LIND**, Plaintiff,

v.

**VANGUARD OFFSET PRINTERS, INC.,**
**and Thomas B. Tyrrel, Defendants.**

No. 91 Civ. 2502 (RWS).

United States District Court,
S.D. New York.

July 11, 1994.

Brown & Wood, New York City, for plaintiff; E. Michael Bradley, William C. Rand, of counsel.

Shiff & Tisman, New York City, for defendant Thomas B. Tyrrel; Stephen E. Tisman, of counsel.

*OPINION*

SWEET, District Judge.

Defendant Thomas B. Tyrrel ("Tyrrel") moves to dismiss the Complaint of Plaintiff Gerard G. Lind ("Lind"), pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the grounds that it fails to state a claim upon which relief may be granted; for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.; and to amend his answer, pursuant to Rule 15, Fed.R.Civ. P., in order to assert a statute of limitations defense. For the reasons set forth below, Tyrrel's motion is denied in part and granted in part.

**The Parties**

Plaintiff Lind, a citizen and resident of New York, ran his own printing business known as Lind Brothers prior to the events giving rise to this action. From November 1989 through January 1991, Lind was employed in a managerial position at a company affiliated with Defendant Vanguard Offset Printers, Inc. ("Vanguard"), B.H. Tyrrel ("Tyrrel Inc."). Lind is now employed as a manager in another printing business in New York.

Vanguard was a New Jersey corporation with its primary place of business in Hillside, New Jersey.

Defendant Thomas B. Tyrrel is a citizen and resident of New Jersey, the Chairman of Vanguard, an owner of more than two-thirds of Vanguard's stock, and allegedly a "controlling person" of Vanguard within the meaning of Section 20 of the Exchange Act, 15 U.S.C. § 78t.

**Prior Proceedings**

The original Complaint in this action, filed on April 10, 1991, sought $150,000 in damages under three causes of action: breach of contract, common law fraud and conversion due to Vanguard's failure to deliver a stock certificate representing the 5% interest in Vanguard purchased by Lind. Upon tendering the stock certificate, the Defendants moved for an order of summary judgment in this action, which was granted by the Court "in part on the grounds of mootness" on July 11, 1991. At that time, Lind was granted leave to replead.

On January 14, 1992, Vanguard filed for protection under Chapter 11 of the Bankruptcy Code and that case is now pending in the United States Bankruptcy Court for the Southern District of New York before the Honorable Tina L. Brozman, Bankruptcy Judge.

On January 17, 1992, Lind served his first Amended Complaint which alleged the following counts: breach of contract, breach of fiduciary duties, conversion, fraud, and fraudulent misrepresentation pursuant to Sections 10(b) and 20 of the Securities and Exchange Act of 1934 (the "Exchange Act"), as codified at 15 U.S.C. §§ 78j(b), 78t, and Rule 10b–5, as promulgated under 17 C.F.R. § 2450.10b–5.

On August 13, 1993, Lind filed his Second Amended Complaint alleging $150,000 worth of damages based upon the following six counts: (1) federal securities fraud, in violation of § 10(b) of the Exchange Act; (2) breach of contract; (3) common law fraud; (4) breach of fiduciary duty; (5) conversion; and (6) unjust enrichment.

The motion was filed on March 9, 1994 and oral argument was heard by this Court on

May 11, 1994. The motion was considered fully submitted at that time.

### Facts

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in their favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here and set forth below are taken from the Plaintiff's Second Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motions.[1]

Lind and his nephew, who is not a party in this action, were employed by Tyrrel Inc. from November 1989 through February 1, 1991. Between September 1989 and February 1990, Lind and Tyrrel had a series of discussions at Tyrrel's Manhattan office concerning the sale of some of Vanguard's stock.[2] These discussions culminated in the signing of a written agreement (the "Agreement") between Lind and Tyrrel on February 16, 1990.

The terms of the Agreement stated that Tyrrel would sell to Lind five percent of Vanguard's stock for $150,000, to be paid in three installments, and that Vanguard would have the right to redeem Lind's stock for a minimum of $150,000 should Lind choose to sell. The text of the Agreement is as follows:

February 16, 1990

*Understanding Between the Two Parties*

Gerard G. Lind and Vanguard Offset Printers and its majority stockholder Thomas Tyrrel.

1. Five percent equity in Vanguard for $150,000

| Payment | |
|---|---|
| $70,000 | February 6 |
| $30,000 | March 15 |
| $50,000 | April 20 |

$150,000

2. An option to buy 5 percent *additional* equity in Vanguard between November 1, 1990 and June 30, 1992 for $150,000.

3. It is the understanding between the two parties that if G. Lind wishes to sell his stock he must first offer it back to Vanguard and receive a minimum of $150,000.

4. That the money will be used in the operation of the business and *not* to repay shareholder loans or buy back shareholders' equity. (Exclusive of Tom and Biff's short-term loan only when Tyrrel pays an equal amount.)

Between February 16 and April 23, 1990, Lind paid Vanguard $150,000, pursuant to the terms of the Agreement. On March 26, 1990, one month prior to Lind's final $50,000 installment, Lind asked Tyrrel, in the form of a written memorandum, to furnish various

---

1. Rule 12(b)(6) also imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *Accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989)).

2. Although not alleged in the Second Amended Complaint, both parties agree that during the course of these discussions Lind was aware that Vanguard and Merrill, Lynch were negotiating the possible purchase of Vanguard at a value of between $12 to $16 million. Such a sale would have increased the value of Lind's $150,000 investment to between $600,000 to $800,000. (*See* Def.'s Mem. of Law at 6; Pl.'s Mem. of Law at 2.)

corporate and financial information regarding Vanguard. Tyrrel did not provide the requested information. After the final installment payment, Lind requested Tyrrel to provide his stock certificates. Tyrrel failed to do so and their relationship deteriorated. On February 1, 1991, Tyrrel terminated Lind's employment at B.H. Tyrrel, and Lind filed this action a few months later.

Lind claims that the Defendant's refusal to redeem Lind's shares for a minimum of $150,000 breached the third paragraph of the Agreement, which he contends creates a "put" option.

According to Lind, Tyrrel fraudulently induced him into entering into the Agreement through a series of false misrepresentations and omissions. For example, Lind contends that Tyrrel told him that he would share in the management, control and operation of Vanguard so that Lind could protect the value of his investment. However, Lind found that the Defendant "refused to allow Lind to share in the management, control and operation of Vanguard ... [and] refused to provide financial reports and information regarding Vanguard to Lind despite requests that they do so, and contrary to Tyrrel's representation to Lind." (Sec.Am.Compl. ¶ 30.)

Lind also claims that Tyrrel concealed the fact that Vanguard had guaranteed 100% of a $5 million loan made by Orix Credit Alliance (the "Orix Loan") to Vanguard and several other companies then under Tyrrel's control. Lind claims he was unaware of the fact that if Tyrrel Inc. or these other companies defaulted on their share of interest on the Orix loan, then Vanguard would be required to cover the defaulting company's share. Lind contends that a material cause of Vanguard's bankruptcy was the increased interest expenditure on the other companies' share of the Orix loan and that if he had known of the guarantee or the pledge of assets, he would never had purchased the Vanguard stock.

On April 10, 1991, Lind filed his original Complaint. On April 29, 1991, Lind received a certificate representing the Vanguard stock he purchased on February 16, 1990. On July 26, 1991, at a special meeting of Vanguard's stockholders in West Orange, New Jersey, the Defendants refused to purchase Lind's shares for a minimum of $150,000.

## Discussion

### I. Legal Standards

In addressing the Defendant's motion, the following familiar standards are germane. First, "[s]ummary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As a general rule, all ambiguities and inferences drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. However, where the nonmoving party bears the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (citations and internal quotation omitted). In sum, if in "[v]iewing the evidence produced in the light most favorable to the nonmovant, ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *See also Bay,* 936 F.2d at 116.

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). The complaint's allegations must be construed in the light most favorable to the plaintiff and the plaintiff's allegations accepted as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n,* 423 F.2d 188,

191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

## II. *Lind's Contract Claims Are Dismissed*

Lind alleges two breach of contract claims: first, he contends that Tyrrel's refusal to buy back Lind's shares, or his violation of the alleged "put" option, breached the third paragraph of the Agreement; second, he contends that the proceeds of the stock sale were used by Tyrrel to repay the interest on the Orix loan in violation of the fourth paragraph of the Agreement.[3]

■ When a contract is before a Court, and its language is unambiguous, the Court may render a judgment rejecting a claim which is contradicted by the contract's express language. *See, e.g., Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir.1989) (granting summary judgment on unambiguous contract); *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir.1980) (affirming summary judgment construing unambiguous contract provisions). Tyrrel's motion seeking the dismissal of Lind's contract claims must be granted as the express terms of the contract, as described below, are unambiguous.

### A. *A "Put" Option Does Not Exist Under the Agreement*

■ Lind claims that the third paragraph of the Agreement must be construed as a "put" option which entitles him to compel Vanguard to purchase the stock at any time while simultaneously guaranteeing Vanguard a right of first refusal should Lind seek to sell the shares externally. The third paragraph of the Agreement states in full: "It is the understanding between the two parties that if G. Lind wishes to sell his stock he must first offer it back to Vanguard and receive a minimum of $150,000."

The wording of the third paragraph is unambiguous and may only be read as a right of first refusal or a first option and not as a "put" option. The plain meaning of this paragraph indicates that there is only an obligation upon Lind to *first offer* the stock back to Vanguard, before seeking to sell it to another party. The use of "the limiting word 'First' indicates that there is no intention to create a power of acceptance in the promisee; instead it indicates that the promisee shall be the first party to be given such a power." 1A Corbin on Contracts, § 261A at 485 (1963). Here, the word "first" by definition indicates that the possibility of an "other" must exist.

New York Courts have found that the use of the word "first" indicates that a contract cannot be interpreted to force an absolute or unconditional option to purchase, for in order to read such a right, the word "first" would have to be eliminated from the contract language. *Cf. R.I. Realty Co. v. Terrell,* 254 N.Y. 121, 124–25, 172 N.E. 262 (1930) (holding that the use of the word "first" indicates that there was no absolute or enforceable obligation to buy back property in question); *Blau–Par Corp. v. Reliance Chem. Corp.,* 170 A.D.2d 811, 565 N.Y.S.2d 910, 912 (3d Dept. 1991) (to read contract otherwise would render the "adjective 'first' immediately preceding the word 'option' ... meaningless."); *London v. Joslovitz,* 279 A.D. 252, 110 N.Y.S.2d 56, 58 (finding it "wholly inescapable, however, that in order to construe this instrument as an absolute and unconditional option to purchase, that word 'first' must be eliminated or ignored. This, the Court of Appeals has said squarely, may not be done."), *aff'd, application to appeal granted,* 279 A.D. 957, 110 N.Y.S.2d 926 (3d Dept. 1952).

Moreover, the word "offer" by definition does not oblige the offeree to purchase the stock, rather it creates only a "power" and not a "duty" of acceptance. *See, e.g., V'Soske v. Barwick,* 404 F.2d 495, 499 (2d Cir.1968), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1197, 22

---

3. Since the Agreement is a valid written contract governing this action, the unjust enrichment cause of action is hereby dismissed in accordance with Lind's Memorandum of Law, (Pl.'s Mem. of Law at 26), which acknowledges that an unjust enrichment claim is precluded by a breach of contract claim where there is an express agreement. *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193–94 (1987) (affirming dismissal of quasi-contract claim in breach of contract action).

L.Ed.2d 454 (1969) (applying New York law and Restatement (Second) of Contracts §§ 24, 26 (Tent.Draft No. 1, 1964)).

Accordingly, there is no obligation placed upon Vanguard to accept the offer, only on Lind to make it. The terms of the third paragraph create a right of first refusal and not a "put" option.

### B. Tyrrel Has Not Breached the Fourth Paragraph of the Agreement

■ Lind contends that Tyrrel used the proceeds of the stock sale to repay the Orix loan in violation of the fourth paragraph of the Agreement which provides in full: "That the money will be used in the operation of the business and *not* to repay shareholder loans or buy back shareholders' equity. (Exclusive of Tom and Biff's short-term loan only when Tyrrel pays an equal amount)."

The $150,000 purchase price for the 5% interest in Vanguard was paid in three installments, all of which were deposited into Vanguard's general operating account: $70,000 on February 20, 1990; $30,000 on March 14, 1990; and $50,000 on April 23, 1990. (Anderson Aff. ¶¶ 3–5; Ex. A–F.)

A review of Vanguard daily bank balance summary statements reveals that there was always enough money in Vanguard's account to cover the Credit Alliance payments. (*See* Anderson Aff. Ex. G.) Vanguard made two payments to Credit Alliance on the Orix Loan: $27,355.76 on April 20, 1990 and $27,255 on May 15, 1990. (Anderson Aff. ¶ 8.) As noted by Vanguard's controller, the balance in Vanguard's account on the day before the April 20, 1990 payment was $49,749.60; the balance the day after the payment was $127,570.31. Similarly, the balance in Vanguard's account before the May 15, 1990 payment was $85,598.41; the balance the day after the payment was $107,122.51. (Anderson Aff. ¶ 9) Between February 20 and May 15, 1990, more than $870,000 was

deposited into Vanguard's account, exclusive of Lind's $150,000 investment. During the same period Vanguard paid out more than $230,000 for other operating expenses, which would have easily consumed Lind's funds.

■ Thus, as Lind has not proffered any factual basis for his assertion that his—as opposed to Vanguard's—monies were used as payments on the Orix loans,[4] and in light of a review of the documents before this Court, his conclusory allegations cannot survive Vanguard's motion for summary judgment on this second breach of contract claim. *See, e.g., Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

### III. Lind's Conversion and Breach of Fiduciary Responsibility Claims Are Dismissed

### A. Conversion

■ Lind next alleges that Tyrrel converted Lind's $150,000 investment in Vanguard and used it to pay the interest and principal payments for two companies controlled by Tyrrel—B.H. Tyrrel and 110 Greenwich Street Corporation.

■ Conversion requires a showing: (1) that the plaintiff had an ownership interest or an "immediate superior right of possession to property"; and (2) that the defendant exercised "unauthorized interference with plaintiff's ownership or possession of such property." *Republic of Liberia v. Bickford,* 787 F.Supp. 397, 402 (S.D.N.Y.1992); *see also Massive Paper Mills v. Two–Ten Corp.,* 669 F.Supp. 94, 95 (S.D.N.Y.1987) (same).

In this case, pursuant to the Agreement, Vanguard was authorized to use Lind's $150,000 investment for its general corporate purposes. Under the terms of the Agreement, there was no requirement to segregate Lind's investment monies from other funds

---

4. The only evidence offered in support of this allegation is put forth in Lind's Rule 3(g) statement which is unsupported by an affidavit, deposition testimony, interrogatory answer or an admission. As the Second Circuit has held: "A Rule 9(g)[3(g)] statement by counsel on a motion for summary judgment cannot be a substitute for an affidavit as to the facts." *Zanghi v. Inc.*

*Village of Old Brookville,* 752 F.2d 42, 47 (2d Cir.1985). Similarly, an assertion in a memorandum of law cannot create a *bona fide* issue of fact. *See, e.g., Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984); *Park Ave. Tower Assocs. v. City of New York,* 746 F.2d 135, 141 (2d Cir. 1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985).

nor, as discussed above *supra* II B, were the monies needed to pay the interest on various loans to Credit Alliance. The funds were deposited in the Vanguard's operating account and Lind has not shown that either Vanguard or Tyrrel spent the monies in an unauthorized manner. As a matter of law, Lind has failed to adduce sufficient facts to support his claim that Tyrrel wrongfully converted his invest into the Orix loan payments.

### B. *Breach of Fiduciary Duty*

Lind claims that as an employee of Tyrrel and as a shareholder in Vanguard, he has a claim for breach of fiduciary duty since Tyrrel was the Chairman and a controlling shareholder of Vanguard.

■ First, under New York law, an employer-employee relationship is not fiduciary in nature. *See Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1474 (S.D.N.Y.1992); *Ingle v. Glamore Motor Sales, Inc.,* 140 A.D.2d 493, 528 N.Y.S.2d 602, 604 (2d Dept.1988), *aff'd,* 73 N.Y.2d 183, 538 N.Y.S.2d 771, 535 N.E.2d 1311 (1989). Thus, Lind may not claim a fiduciary relationship to Tyrrel as an employee.

■ Second, Lind may not assert a breach of fiduciary duty claim against Tyrrel for the alleged improper use of his monies since such claims belong to the corporation and can only be brought derivatively. *See, e.g., Glenn v. Hoteltron Sys., Inc.,* 74 N.Y.2d 386, 392, 547 N.Y.S.2d 816, 818–19, 547 N.E.2d 71, 73–75 (1989) (holding that recovery of corporate property improperly used for the benefit of a corporate officer/shareholder in violation of his fiduciary duties is a claim of the corporation, and any recovery must go to the corporation, not to the "innocent shareholder").

Accordingly, both Lind's conversion and breach of fiduciary duty claims must be dismissed as a matter of law.

### IV. *Lind Has Stated a Claim in Fraud*

#### A. *Lind's Common Law Fraud Claims Are Viable*

■ There are five elements necessary to sustain a claim in fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Department Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 141 (2d Cir.1993); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969). In this case, Lind has alleged sufficient facts as to each of these elements to withstand either the Defendant's motion to dismiss or for an order of summary judgment.

■ A fraud claim lies when a party either fraudulently misrepresents or conceals a material fact. Although " '[a] duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them," a duty to disclose is recognized in three circumstances: first, where a party has made a "partial or ambiguous statement"; second, where the "parties stand in a fiduciary or confidential relationship with each other"; and third " 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' " *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Junius Constr. Corp. v. Cohen,* 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.), *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 45 (2d Cir.1991); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir.1984)).

Lind contends that the third category applies here: Tyrrel possessed and concealed superior knowledge about Vanguard not readily available to Lind and Tyrrel also knew that Lind was acting on the basis of that mistaken knowledge. Lind claims that Tyrrel made the following false representations: first, that Vanguard would profit from non-labor costs and second, that Merrill Lynch might buy Vanguard for $12–16 million. Lind contends that at the same time Tyrrel fraudulently concealed the following facts: first, that Vanguard had sold its tangible operating assets to B.H. Tyrrel Inc.; second, that B.H. Tyrrel had pledged the assets

as security for the Orix loan; and third that Vanguard was paying interest and principal to Orix for loans to benefit B.H. Tyrrel and 110 Greenwich Street Corporation.

Tyrrel does not refute Lind's claims concerning the allegedly misrepresented and concealed facts, rather, he contends that, as a matter of law, there can be no fraud claim for what amounts to a breach of contract. However, the case law cited by Tyrrel merely stands for the proposition that courts will dismiss fraud claims where a plaintiff's fraud allegation concerns a party's intent to abide by a contract. *See, e.g., Paper Corporation of U.S. v. Schoeller Technical Papers, Inc.,* 759 F.Supp. 1039, 1044 (S.D.N.Y.1991); *Tesoro Petroleum Corp. v. Holborn Oil Co.,* 108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dept.1985); *Kotick v. Desai,* 123 A.D.2d 744, 507 N.Y.S.2d 217 (2d Dept.1986).

The cases concerning the parties' future intent to honor a contract are irrelevant. In this action, Lind contends not only that Tyrrel misrepresented his intention to honor the Agreement, but that Tyrrel fraudulently concealed and omitted various material facts in order to induce Lind to enter into the Agreement, a factual allegation which remains at issue.

Tyrrel also attacks Lind's claim on the theory that it was unreasonable for Lind to rely upon his alleged fraudulent omissions. Lind counters that he requested Tyrrel to give him various financial reports, but never received such documents notwithstanding Tyrrel's alleged assurances that they would be delivered. Lind states that he inspected the plant, its equipment and its operations, but had no way of knowing that these assets no longer belonged to Vanguard. The reasonableness of Lind's investment, in light of Tyrrel's alleged fraudulent misrepresentations and omissions, remains a triable issue of fact which may not be disposed of either on a motion to dismiss or for an order of summary judgment.

### B. **Lind's Federal Securities Fraud Claims Are Not Barred by the Statute of Limitations**

Tyrrel has moved to assert a statute of limitations defense against Lind's federal securities fraud claim, pursuant to the Supreme Court's holding in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) ("*Lampf*"). Tyrrel claims that Lind failed to assert his federal securities fraud claim until August of 1993 when he filed his Second Amended Complaint. However, Tyrrel ignores the fact that Lind asserted his federal securities fraud claim in his first Amended Complaint which was filed on January 17, 1992, within the three year *Lampf* limitations period.

Although Lind did not allege the facts concerning the Orix loan in his first Amended Complaint, the amendments added in the Second Amended Complaint stem from the original conduct revolving around the consummation of the Agreement. As such, these claims relate back to the first Amended Complaint, pursuant to Federal Rule 15(c)(2) which provides for relation back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2).

The chief inquiry under Rule 15(c) concerns whether adequate notice has been given to the opposing party " 'by the general fact situation alleged in the original pleading.' " *In re Chaus Sec. Litig.,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992) (quoting *Contemporary Mission, Inc. v. New York Times Co.,* 665 F.Supp. 248, 255 (S.D.N.Y. 1987), *aff'd,* 842 F.2d 612 (2d Cir.), *cert. denied sub. nom., O'Reilly v. New York Times Co.,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988)). The relation back doctrine is designed to ensure that an opposing party has been given adequate notice, for statute of limitations purposes, of the claim arising out of the transaction or occurrence which spawned the litigation. *See Tri–Ex Enterprises, Inc. v. Morgan Guar. Trust Co.,* 586 F.Supp. 930, 932 (S.D.N.Y.1984).

Here, Lind's additional allegations in his Second Amended Complaint arose out of the

original transaction—the entry into the Agreement. The gravamen of the first Amended Complaint's federal securities fraud claim concerned Tyrrel's alleged fraudulent misrepresentation during the negotiation of the Agreement, including: the alleged "put" option; Lind's future role in the management, control and operation of Vanguard; and concealment or omissions from Lind of facts regarding Vanguard's financial status. The Second Amended Complaint additionally alleges that during the negotiation of the Agreement, Tyrrel fraudulently concealed, among other facts, that Vanguard's equipment had been pledged against the Orix Loan. The Second Amended Complaint relates back to the first Amended Complaint by virtue of the fact that it incorporates additional omissions and misrepresentations concerning the nature of the Agreement. As a result, Tyrrel's motion to amend his answer is denied.

### Conclusion

For the reasons set forth above, Tyrrel's motion for an order of summary judgment dismissing Lind's breach of contract, conversion, unjust enrichment and breach of fiduciary duty claims is granted. Tyrrel's motion for an order of summary judgment dismissing Lind's common law fraud and securities fraud claims is denied as is his motion to amend his answer to include a federal securities fraud statute of limitations defense.

All discovery will be completed by August 24 and pretrial order filed September 7, 1994.

It is so ordered.